Carlota C. NORIEGA and Roberto Noriega, Jr., Individually and as Surviving Heirs at Law of Roberto Noriega, Sr., Deceased, Appellants,

v.

Ruy MIRELES, M.D., and Robert Pardo, M.D., Appellees.

No. 13–94–224–CV.

Court of Appeals of Texas, Corpus Christi.

May 23, 1996.

Rehearing Overruled July 18, 1996.

George Ann Harpole Maixner, Julie N. Dickerson, William Robert Anderson, III, Sorrell, Anderson, Lehrman, Wanner & Thomas, Corpus Christi, for Appellants.

Richard A. Wagner, Patterson & Wagner, Ryan G. Anderson, Ruth G. Malinas, Cynthia Day King, William R. Crow, Jr., Ball & Weed, San Antonio, for Appellees.

Before DORSEY, YAÑEZ and CHAVEZ, JJ.

## OPINION

DORSEY, Justice.

Carlota Noriega and Roberto Noriega, Jr. appealed a summary judgment against them in their suit against Dr. Ruy Mireles and Dr. Robert Pardo for medical malpractice. The Noriegas claim that Dr. Mireles and Dr. Pardo were negligent in the diagnosis and treatment of Roberto Noriega, Sr., leading to his death. We reverse and remand.

Mr. Noriega's wife and son sued Dr. Mireles and Dr. Pardo for negligence, lost chance of survival or cure, and negligent infliction of emotional distress. The appellants allege that the physicians were negligent in their treatment of Mr. Noriega, causing them to miss a diagnosis of neurosyphilis, and allowing the disease to progress to a point to cause Mr. Noriega to suffer seizures. Mr. Noriega was prescribed Dilantin for his seizures. The Noriega's suit alleged that the Dilantin caused Mr. Noriega to develop Stevens–Johnson syndrome, which eventually led to his death. They further assert that if Mr. Noriega's neurosyphilis had been diagnosed and treated in time he would not have had seizures, would not have been treated with Dilantin, would not have developed Stevens–Johnson syndrome as a result of taking the Dilantin, would not have developed complications as a result of the Stevens–Johnson syndrome, and therefore would not have died.

Dr. Mireles and Dr. Pardo filed expert witness affidavits on their own behalf denying that they strayed from the acceptable standard of care in treating Mr. Noriega, and moved for summary judgment. The plaintiffs responded with an affidavit from Dr. Ralph Lilly, who stated that Dr. Mireles and Dr. Pardo failed to adhere to the appropriate standard of care in Mr. Noriega's case. In his affidavit, Dr. Lilly states that he is a licensed physician specializing in neurology, and that he maintains a private medical practice in that specialty. He states that he reviewed the medical records of Mr. Noriega from the defendants and the hospitals in which Mr. Noriega was treated, as well as the depositions of Dr. Pardo and Dr. Mireles. In his six-page affidavit, Dr. Lilly traces the treatment Mr. Noriega received, states that he is familiar with the applicable standard of care, and opines that the treatment provided by Drs. Pardo and Mireles fell below that standard in several particulars and that the failure of those doctors to provide proper medical care was a proximate cause of Mr. Noriega's death. The trial court granted a general summary judgment in favor of Dr. Mireles and Dr. Pardo, and this appeal ensued.

## Arguments on Appeal

In their fourth point of error, appellants argue that summary judgment was improper because the controverting affidavit of their expert witness, Dr. Ralph Lilly, was not defective. Although appellees filed objections to Dr. Lilly's affidavit in the trial court, the court never ruled on those objections. We first determine if Dr. Lilly's original affidavit was defective.

## 1. Sufficiency of Dr. Lilly's Affidavit

Appellees argue that Dr. Lilly's affidavit was fatally defective in form and substance and failed to raise a fact issue with regard to the alleged negligence. Appellees have three complaints about Dr. Lilly's affidavit: the jurat is defective, the affidavit is not based on personal knowledge, and those medical records and portions of depositions that Dr. Lilly relied on in reaching his conclusions were not attached to his affidavit.

### A. Sufficiency of the Jurat

■ The appellees argue that Dr. Lilly's affidavit was defective because it was sworn to as "true and correct to my best knowledge *and belief.*" Appellees argue that since he added the word "belief," Dr. Lilly is not stating that he *knows* the facts related in the affidavit to be true. Appellees assert that

> [b]y adding "belief" to the statement regarding the veracity of the factual assertions, the affiant *positively avers that he does not have knowledge* as to each factual assertion contained in the affidavit.

(emphasis added). Appellee cites *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex. 1994), and *Flanagan v. Martin,* 880 S.W.2d 863, 866 (Tex.App.—Waco 1994, writ dism'd w.o.j.), as support for this proposition.

While we agree that the general rule is that affidavits must be sworn to on the affiant's "personal knowledge," the present case involves expert witnesses, who operate under special rules. Rule 702 of the Rules of Civil Evidence states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. TEX.R.CIV.EVID. 702. The rules also state that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

TEX.R.CIV.EVID. 703. These rules clearly contemplate an expert bringing more to court than his personal knowledge of the facts in a particular case. An expert witness is relied upon not only for his knowledge of the facts in a particular case, but also for his expertise in his particular field, which expertise he has gained through his professional training and experience. Appellees' argument essentially asks us to hold that an expert witness cannot simultaneously know and believe something. This we decline to do. Adding "belief" to his jurat did not, as appellee argues, affirmatively show that Dr. Lilly did not have personal knowledge of the facts contained in his affidavit.

Furthermore, appellees' reliance on *Humphreys* and *Flanagan* is misplaced. The affidavits discussed in *Humphreys* and *Flanagan* were not those of expert witnesses. *See Humphreys*, 888 S.W.2d at 470; *Flanagan*, 880 S.W.2d at 866. Accordingly, we do not find them controlling.[1] Under the circumstances in this case, we hold that Dr. Lilly's jurat was sufficient.

### B. Dr. Lilly's Personal Knowledge

■ Appellees also argue that Dr. Lilly's affidavit failed to show he had personal knowledge of the facts contained therein. As discussed above, the rules regarding expert witnesses necessarily contemplate the wit-

ness bringing his particular expertise to the particular case, and making use of that expertise to formulate an expert opinion. The general rule for affidavits provides that

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

TEX.R.CIV.P. 166a(f). In situations where expert witnesses are involved, the rules of evidence listed above are also implicated. We will look to Dr. Lilly's entire affidavit to determine whether the facts asserted therein are based on his "personal knowledge." *Coleman v. United Sav. Assoc. of Texas*, 846 S.W.2d 128, 131 (Tex.App.—Fort Worth 1993, no writ) (citing *Fair Woman, Inc. v. Transland Mgt.*, 766 S.W.2d 323, 323 (Tex. App.—Dallas 1989, no writ); *Moya v. O'Brien*, 618 S.W.2d 890, 893 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.)).

Dr. Lilly stated in his affidavit that he had "personal knowledge of each of the facts and opinions stated herein...." He further stated that he is a board-certified specialist in neurology, and that he has maintained a private practice in that specialty since 1991. Dr. Lilly stated that he had reviewed Mr. Noriega's medical records from Dr. Mireles, Dr. Pardo, and other doctors who treated Mr. Noriega, as well as the medical records from the various hospitals where Mr. Noriega was treated during his illness. He also stated that he had reviewed Dr. Mireles's and Dr. Pardo's depositions in this case.

An expert may rely on inadmissible facts or data in forming an opinion if they are of the type reasonably relied on by other experts to make opinions or draw inferences. TEX.R.CIV.EVID. 703; *Baylor Medical Plaza Servs. Corp. v. Kidd*, 834 S.W.2d 69, 76 (Tex. App.—Texarkana 1992, writ denied). In a medical malpractice case, the plaintiff's expert witness is often forced to rely upon medical records to form his opinion regard-

---

1. Appellants filed a Motion for Leave to File Amended Affidavit and an amended affidavit which corrected the jurat. Appellees argue that, since the trial court's plenary power over the case had expired when it finally ruled on the motion, the amended affidavit was not properly before the trial court. We agree that the amended affidavit was not properly before the trial court, but our holding regarding the original affidavit renders this point moot.

ing the performance of the defendant physician. This is especially true in situations such as the one at bar, in which the patient is deceased, precluding any physical examination by the expert himself. Although reading medical records does not lead to "personal knowledge" in the truest sense of the word, in situations such as this it is the only means by which the expert can gain knowledge regarding the patient's treatment. We hold that, by reviewing the voluminous medical records generated by the parties caring for Mr. Noriega, as well as the deposition testimony of the defendant physicians, and by discussing which records and depositions he reviewed, Dr. Lilly showed that he had "personal knowledge" of the facts related in his affidavit sufficient to meet the requirements of Rule 166a(f).

## C. Failure to Attach Medical Records

■ During oral argument, appellees argued that appellants' summary judgment evidence was fatally defective because appellants failed to attach the medical records Dr. Lilly reviewed to his affidavit. We allowed the parties to file post-submission letter briefs relating to this issue.

Appellees argue that, under the rules of civil procedure, an affidavit that refers to documents must have those documents attached when it is filed. TEX.R.CIV.P. 166a(f). Appellees further argue that the failure to attach such documents to the affidavit is a substantive defect, rather than merely a formal defect, and as such can be raised for the first time on appeal. *Ceballos v. El Paso Health Care Sys.*, 881 S.W.2d 439, 445 (Tex. App.—El Paso 1994, writ denied).

In *Ceballos*, the plaintiff's expert witness affidavits were made by a physician and a nurse, neither of whom lived or practiced in Texas. *Id.* at 441. The physician's affidavit stated that he had personal knowledge of all the facts set forth in his affidavit, and that he "had the opportunity to review the medical chart relating to the ... hospital admission of" the decedent. The medical chart relied upon by the physician and the nurse expert witnesses was not attached to either of their affidavits. The El Paso Court of Appeals in *Ceballos* determined that:

The failure to attach to, or serve with, Dr. Krumlovsky's and Nurse Williams' affidavits sworn or certified copies of the medical chart or other record referred to therein is not simply a *defect in the form* of his affidavit, but rather is a *defect in the substance* thereof. This is true because there is no way to tell from these affidavits on what specific entries, notations or statements entered on the medical chart they are basing their respective opinions.

*Ceballos*, 881 S.W.2d at 445. As a substantive rather than merely formal defect, it could be raised for the first time on appeal. *See id.*

We are reluctant to follow the *Ceballos* decision insofar as it may hold that the failure to attach the medical records relied upon an expert witness's affidavit is necessarily a substantive defect rather than a formal defect. If there is a dispute as to what is contained in the medical records, we agree that the failure to attach the medical records to the summary judgment affidavit would be a substantive defect. In the present case, however, there is no argument about the specific treatment that Mr. Noriega received while under Dr. Mireles's and Dr. Pardo's care. Rather, the dispute concerns whether the treatment they did provide met the applicable standard of care. Dr. Lilly's affidavit sets out in detail the treatment that Mr. Noriega received. His account of Mr. Noriega's treatment is not at issue. Rather, the issue is the treatment that Mr. Noriega should have received but did not. We hold that in situations such as this, where there is no dispute regarding the contents of the medical records and the treatment the patient received, and in which the disputed issue relates to additional treatment that the patient clearly did not receive but arguably should have, the failure to attach the relevant medical records to the expert witness's affidavit is a formal, rather than a substantive defect. We decline to follow the *Ceballos* decision insofar as it may hold otherwise. Since the appellees failed to object to the absence of medical records when Dr. Lilly filed his controverting affidavit, we hold in this case that any error regarding this point

was waived. Appellant's fourth point of error is sustained.

## 2. Do the Defendant Physicians' Affidavits Support Summary Judgment?

Appellants claim in their first two points of error that the trial court improperly entered summary judgment against them because 1) the appellees failed to disprove any element of their cause of action for negligence, and 2) the summary judgment evidence offered by the appellees was insufficient to support the judgment.

In their motions for summary judgment, Dr. Mireles and Dr. Pardo argued that there was no genuine issue of material fact regarding two of the elements of appellants' medical malpractice claim, breach of duty and proximate cause.

We review a summary judgment to determine whether the proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or whether the defendant has established all elements of its affirmative defense. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In reviewing the propriety of a summary judgment, we take all evidence favorable to the non-movant as true, resolve any doubts in the non-movant's favor, and indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 548–49.

In a medical malpractice suit, because the trier of fact must be guided by the opinion testimony of experts, *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965), a defendant physician can obtain summary judgment based on his or her uncontroverted testimonial evidence if he establishes, as a matter of law, that no genuine issue of material fact exists as to one or more elements of the plaintiff's cause of action. TEX.R.CIV.P. 166a(c); *Gibbs*, 450 S.W.2d at 828; *Davis v.*

*Manning*, 847 S.W.2d 446, 449 (Tex.App.— Houston [14th Dist.] 1993, no writ). Summary judgment may be upheld on the uncontroverted testimony of an interested witness "if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986); TEX.R.CIV.P. 166a(c). The testimony of an interested expert witness can support summary judgment as long as it meets the requirements of Rule 166a, even if that expert is a party to the suit. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991).

In Dr. Mireles's affidavit in support of the motion for summary judgment, he described his medical training and experience in the field of neurology, and provided a detailed account of his treatment of Mr. Noriega and the treatment Mr. Noriega received from other physicians. He stated that, as a specialist in neurology, he is familiar with the standard of care for the diagnosis, management, and treatment of someone like Mr. Noriega. He then specifically set out that standard of care. He also outlined the care he actually provided for Mr. Noriega, and how his care conformed to the standard of care. Dr. Mireles's affidavit is clear, positive, direct, credible, free from contradictions and inconsistencies, and could have been readily controverted. We hold that Dr. Mireles's affidavit sufficiently disproved the elements of breach of duty and proximate cause in appellants' cause of action for medical malpractice to shift the burden to appellants to offer expert testimony to contradict Dr. Mireles's expert testimony. Appellants' first two points of error are overruled as to Dr. Mireles.

Dr. Pardo also set out in his affidavit his medical training and experience in the field of internal medicine and a detailed description of the care he provided for Mr. Noriega and the care Mr. Noriega received from other physicians. As with Dr. Mireles's affidavit, Dr. Pardo's affidavit set out the standard of care applicable in the case of a patient presenting with Mr. Noriega's symptoms, and specifically outlined the appropriate medical care required. He also outlined the

care he actually provided for Mr. Noriega, and how his care conformed to the standard of care. Like Dr. Mireles's affidavit, Dr. Pardo's affidavit is clear, positive, direct, credible, free from contradictions and inconsistencies, and could have been readily controverted. We hold that Dr. Pardo's affidavit sufficiently disproved the elements of breach of duty and proximate cause in appellants' cause of action for medical malpractice to shift the burden to appellants to offer expert testimony to contradict Dr. Pardo's expert testimony. Appellants' first two points of error are overruled as to Dr. Pardo.

### 3. Does Dr. Lilly's Affidavit Create a Fact Issue?

Once expert opinion establishes that the defendant's acts conformed to the standard of care, the plaintiff must offer expert testimony to contradict the defendant's expert testimony. *Tijerina v. Wennermark*, 700 S.W.2d 342, 347 (Tex.App.— San Antonio 1985), *overruled on other grounds*, 774 S.W.2d 662 (Tex.1989). By their third point of error, the appellants claim that the trial court erred in granting summary judgment for Dr. Mireles and Dr. Pardo because the controverting affidavit of their expert, Dr. Lilly, was sufficient to show an issue of fact with regard to the elements of their claim. Specifically, the appellants claim that Dr. Lilly's affidavit showed a fact issue with regard to whether or not Dr. Mireles and Dr. Pardo followed accepted medical practices in their care and treatment of Mr. Noriega and whether any such failure was the proximate cause of Mr. Noriega's death.

Appellees argue in response that Dr. Lilly's affidavit was conclusory and vague and was insufficient to controvert the summary judgment proof offered by Dr. Mireles and Dr. Pardo.

Dr. Lilly outlined in his affidavit the medical records he reviewed in forming his opinion and the treatment that Mr. Noriega received, as reflected in those records. He stated in his affidavit that "[t]he direct cause of Mr. Noriega's death was the Stevens–Johnson syndrome which he developed as a reaction to Dilantin." He states that he is familiar with the "standard of care required of a reasonably prudent physician undertaking to diagnose and treat a patient with the signs and symptoms exhibited by Roberto Noriega, Sr." He then specifically outlines that standard of care, including the administration of certain tests for venereal disease, and notes that these tests were not performed in 1989. Dr. Lilly concludes that, in his opinion, the care Mr. Noriega received from Dr. Mireles and Dr. Pardo was "below the accepted standard," in that they failed to timely administer the tests he had described.

In order to raise a fact issue, Dr. Lilly was required to specifically identify the standard of care applicable, demonstrate that he is familiar with that standard, and explain why the defendant physicians' treatment of Mr. Noriega fell below the standard. *Connor v. Waltrip*, 791 S.W.2d 537, 541 (Tex.App.— Dallas 1990, no writ) (McClung, J., concurring); *White v. Wah*, 789 S.W.2d 312, 315–16 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Appellees argue that Dr. Lilly's affidavit is insufficient to raise an issue of fact with regard to Mr. Noriega's treatment and the diagnosis of his neurosyphilis because it does not specifically outline the standard of care applicable when Mr. Noriega was first examined by Dr. Mireles in November of 1989, some three months before he experienced his first seizure. Dr. Mireles further argues that, since Dr. Lilly does not allege that Dr. Mireles's treatment of Mr. Noriega in November 1989 was improper, his affidavit was insufficient to create a fact issue with regard to Dr. Mireles's treatment of Mr. Noriega. Dr. Mireles asserts that since Mr. Noriega was asymptomatic when examined by Dr. Mireles in 1989, there was no basis on which Dr. Mireles could have diagnosed neurosyphilis.

We find Dr. Mireles's arguments unpersuasive. While Dr. Lilly did not controvert the assertion that Mr. Noriega was asymptomatic when Dr. Mireles examined Mr. Noriega, he did note that Mr. Noriega had complained of neurological symptoms in the recent past. He further stated that the routine standard of care for someone experiencing these symptoms involves screening the

patient's blood for venereal disease, and that the medical records show that Dr. Mireles did not order such screening tests. We do not find Dr. Mireles's argument that Mr. Noriega was asymptomatic at the time of his examination to be persuasive. Resolving all doubts and inferences in favor of the non-movant, we hold that Dr. Lilly's affidavit alleged a specific standard of care and showed how Dr. Mireles failed to meet that standard of care. That the standard of care alleged by Dr. Mireles did not match the standard alleged by Dr. Lilly should in itself show that a fact issue existed regarding Mr. Noriega's treatment at the hands of Dr. Mireles and Dr. Pardo. Appellants' third point of error is sustained.

### Cross–Point on Appeal

Appellees argue in a single cross-point on appeal that the summary judgment in favor of Dr. Mireles and Dr. Pardo on appellants' causes of action for lost chance of survival or cure and for negligent infliction of emotional distress should be affirmed, because the supreme court has held that these causes of action are not recognized in Texas. Appellees also argue that appellants have waived any claim under these theories by failing to assert error.

The Texas Supreme Court has held that there is no cause of action for lost chance of survival or cure under the Wrongful Death Act, the Survival Statute, or common law. *Kramer v. Lewisville Mem. Hosp.*, 858 S.W.2d 397 (Tex.1993). In addition, the Texas Supreme Court determined in *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex.1993), that Texas does not recognize a cause of action for negligent infliction of emotional distress.

Appellants have not challenged the summary judgment below with respect to these causes of action. Appellees cross-point on appeal is sustained.

The summary judgment in favor of Dr. Mireles and Dr. Pardo on the causes of action for lost chance of survival or cure and negligent infliction of emotional distress is AFFIRMED. The summary judgment in favor of Dr. Mireles and Dr. Pardo on the cause of action for medical malpractice is

REVERSED and the case ordered REMANDED for further proceedings.