**Brandy F. MARTIN and Jason Martin, Appellants,**

v.

**John DURDEN, D.O., Appellee.**

**No. 14–96–979–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 11, 1997.

Rehearing Overruled Oct. 23, 1997.

ages and attorney's fees awarded to Gulf Printing. Therefore, these issues are also not before us. *Id.*

Laurie L. Pleasant, Joseph McDermott, Houston, for appellants.

Glenn W. Cunningham, Kirk Lee Dobbins, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

LEE, Justice.

Appellants, Brandy and Jason Martin, appeal from a summary judgment in favor of appellee, John Durden, D.O., in a medical malpractice action. In their sole point of error, appellants claim the trial court erred in granting appellee's motion for summary judgment. We reverse and remand for a trial on the merits.

## Background

On the evening of January 21, 1993, Mrs. Martin developed stomach pains while doing sit-ups. At 3:00 p.m., on January 22, 1993, Mrs. Martin went to the emergency room at Huntsville Memorial Hospital complaining of abdominal pains. Dr. Durden, an emergency room physician, examined Mrs. Martin. After performing various tests and procedures, Dr. Durden determined Mrs. Martin's symptoms were too vague to determine a cause for her condition. Dr. Durden treated Mrs. Martin's upper gastric pain and prescribed medication accordingly and her pain dissipated. Dr. Durden, however, had not ruled out the possibility that Mrs. Martin might have appendicitis even though he felt her symptoms did not specifically indicate appendicitis. Before releasing Mrs. Martin from the emergency room, Dr. Durden reviewed the symptoms of appendicitis with Mrs. Martin and instructed her to return to the emergency room if the pain worsened.

Although Mrs. Martin's pain intermittently worsened, she did not return to the emergency room at Huntsville Memorial Hospital or consult another physician until February 6, 1993, when she saw Dr. Michael Killian in Austin, Texas. Dr. Killian was unable to make a definitive diagnosis at that time. Dr. Killian told Mrs. Martin to call him if her condition worsened. Over the next two days, Mrs. Martin's condition worsened as she started vomiting and developed pain in the lower right quadrant of her abdomen. Mrs. Martin returned to Dr. Killian's office on February 8, 1993, at which time, Dr. Killian recommended that she consult a surgeon. On February 9, 1993, Mrs. Martin saw Dr. Yatsu, who first treated Mrs. Martin with antibiotics and, subsequently, performed an appendectomy on March 8, 1993.

On January 23, 1995, appellants filed suit alleging that Dr. Durden's failure to diagnose Mrs. Martin's condition as appendicitis and initiate immediate treatment constituted negligence was below the standard of care for the practice of emergency medicine, and was the proximate cause of her injuries. Appellants claimed that as a result of the delayed diagnosis of appendicitis, Mrs. Martin had marked adhesions in the lower abdominal

walls, pelvis, and around the appendix, which had to be cut free. In his motion for summary judgment, Dr. Durden asserted that he had not breached the standard of care and that his alleged misdiagnosis was not the proximate cause of Mrs. Martin's injuries. The trial court, finding no genuine issue of material fact, granted appellee's motion for summary judgment on June 5, 1996.

## Standard of Review

A defendant is entitled to prevail on his motion for summary judgment if he can establish with competent proof that as a matter of law, there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). The standard for appellate review of a summary judgment is well-established:

(1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true; and

(3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

## Elements of Medical Malpractice Action

In order to prevail on a medical malpractice claim, the plaintiff must establish the following elements:

(1) a duty requiring the defendant to conform to a certain standard of conduct;

(2) the applicable standard of care and its breach;

(3) resulting injury; and

(4) a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury.

*Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ denied). In a medical malpractice case, both establishing summary judgment and precluding summary judgment are dependent upon expert testimony. *Chopra v. Hawryluk*, 892 S.W.2d 229, 231 (Tex.App.—El Paso 1995, writ denied) (citing *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1966)). The affidavit of an interested expert witness, such as a defendant doctor, can support summary judgment if the subject matter is such that a trier of fact would be "guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991); *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986); *Perez v. Cueto*, 908 S.W.2d 29, 31 (Tex.App.—Houston [14th Dist.] 1995, no writ). If the interested expert witness presents evidence sufficient to support the motion for summary judgment, the opposing party must produce its own expert testimony to controvert the summary judgment proof. *Perez*, 908 S.W.2d at 31–32.

## Affidavit in Opposition to Summary Judgment

Dr. Durden asserts for the first time on appeal that appellants' expert affidavit in opposition to summary judgment is insufficient to raise a fact issue because it does not comport with the requirements of Rule 166a(f) of the Texas Rules of Civil Procedure. Dr. Durden claims the affidavit of Dr. Owen Maat, appellant's expert witness, is defective because no sworn or certified copies of the medical records he reviewed in formulating his opinion are attached to his affidavit. Dr. Durden contends that the failure to attach certified copies of the documents upon which an expert relies is a substantive defect, rather than a formal defect, which may be raised on appeal for the first time.

Rule 166a(f) provides in relevant part:

Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served there-

with.... Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with the opportunity, but refusal to amend.

An objection to the form of an affidavit must be raised in the trial court, otherwise it is waived on appeal. *Giese v. NCNB Texas Forney Banking Ctr.*, 881 S.W.2d 776, 782 (Tex.App.—Dallas 1994, no writ); *Avmanco, Inc. v. City of Grand Prairie*, 835 S.W.2d 160, 166 (Tex.App.—Fort Worth 1992, writ dism'd w.o.j.). On the other hand, when an objection to an affidavit is one of substance, it is not necessary to raise such objection in the trial court because there is no requirement of an opportunity to amend. *Rodriquez v. Texas Farmers Ins. Co.*, 903 S.W.2d 499, 506 (Tex.App.—Amarillo 1995, writ denied); *Bell v. Moores*, 832 S.W.2d 749, 756 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Elam v. Yale Clinic*, 783 S.W.2d 638, 643 (Tex.App.—Houston [14th Dist.] 1989, no writ).

In support of his contention that the failure to attach the medical records to Dr. Maat's affidavit is a substantive defect, Dr. Durden cites to *Ceballos v. El Paso Health Care Sys.*, 881 S.W.2d 439, 445 (El Paso 1994, writ denied). In *Ceballos*, a medical malpractice case, the El Paso court of appeals addressed a situation similar to the one at bar. In support of their motion for summary judgment, the appellees produced the affidavit of the defendant treating physician. In opposition to summary judgment, the appellant submitted the affidavits of two expert witnesses. No sworn or certified copies of the medical chart upon which the appellant's expert witnesses relied were attached to their affidavits.

First, the *Ceballos* court addressed this court's previous holding that the failure to first object to a defect in the form of an affidavit in the trial court before raising it on appeal applies to the urging of such defect as grounds for affirmance, as well as reversal of summary judgment under Rule 166a(f). *See Ridgway's, Inc. v. Payne*, 853 S.W.2d 659, 662 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623, 626–27 (Tex.Civ.App.—Houston [14th Dist] 1979, writ ref'd n.r.e.). The *Ceballos* court found that Rule 166a(f) only applies to the urging of such defect as grounds for reversal of summary judgment, not as grounds for affirmance. 881 S.W.2d at 444. Therefore, a defect in the form of an affidavit may be raised as grounds for affirmance of summary judgment for the first time on appeal. *Id.*

Second, the *Ceballos* court addressed whether the failure to attach sworn or certified copies of medical records to an expert witness's affidavit is a substantive or formal defect. The court found the failure to attach sworn or certified copies of the medical chart constituted a defect in the substance of the affidavits, not merely a defect in the form, and could be raised for the first time on appeal. *Id.* at 445. The court determined the defect is substantive because "there is no way to tell from these affidavits on what specific entries, notations or statements entered on the medical chart they are basing their respective opinions." *Id.* The court concluded that the appellant's controverting affidavits were insufficient to raise any fact issues because they did not satisfy the requirements of Tex. R. Civ. P. 166a(f). *Id.*

We disagree with the *Ceballos* court. First, Rule 166a(f) equally applies to defects in form urged as grounds for affirmance, as well as reversal of summary judgment. *Ridgway's, Inc.*, 853 S.W.2d at 662; *Walkoviak*, 580 S.W.2d at 626–27. Second, we find the failure to attach sworn or certified copies of documents relied upon in rendering an expert opinion is merely a defect in form which is waived on appeal if not first raised in the trial court. Such a defect, as with other formal defects, can be easily remedied given an opportunity to amend. We shall consider Dr. Maat's affidavit in determining whether appellants have raised any fact issues with respect to standard of care, breach, and proximate cause.

### Standard of Care

In a claim for medical malpractice, the threshold question is the standard of care. *Chopra*, 892 S.W.2d at 233; *Armbruster v. Memorial Southwest Hosp.*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993,

no writ). The Texas Supreme Court has set forth the standard of care for a physician: "A physician who undertakes a mode or form of treatment which a reasonable and prudent member of the medical profession would undertake shall not be subject to liability for harm caused thereby to the patient." *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977). The plaintiff must prove by competent medical evidence that the defendant did something other health care providers using ordinary care would not have done or that the defendant failed to do something other providers would have done under similar circumstances. *Armbruster*, 857 S.W.2d at 941.

■ As summary judgment evidence, Dr. Durden submitted his own affidavit to establish the standard of care for a patient with Mrs. Martin's symptoms and that he adhered to such standard. In his affidavit, Dr. Durden stated the standard of care requires that the emergency physician obtain the patient's history, perform a physical examination, and order laboratory tests to determine the etiology, *i.e.,* a differential diagnosis, of the patient's symptoms. Next, the physician formulates a list of possible etiologies of the patient's symptoms and discusses the list with the patient, addressing the patient's specific symptoms. If the patient's symptoms are nonspecific, the physician should treat those symptoms which are apparent by prescribing medication and continuing to observe the patient's progress. If the patient's symptoms subside and the vital signs are stable, the physician discharges the patient with instructions to seek follow-up care if the symptoms worsen.

According to Dr. Durden, Mrs. Martin complained of vague upper abdominal pain, stomach cramps, and difficulty in breathing. Dr. Durden performed a physical examination and ordered a blood count, chest x-ray, urinalysis, and pulse oximetry. Dr. Durden then formulated a list of possible etiologies for Mrs. Martin's condition, which included early viral syndrome, gastritis, and urinary tract infection. Even though Dr. Durden felt Mrs. Martin's symptom were too vague to make a specific diagnosis, he did treat her upper gastric pain. Mrs. Martin did not complain of any further pain. Although ap-

pendicitis was on Dr. Durden's differential diagnosis list, it was not, in his opinion, one the three most plausible explanations for Mrs. Martin's condition. Dr. Durden, however, discussed appendicitis with her. Dr. Durden told Mrs. Martin that if it were appendicitis, then her symptoms would worsen. Dr. Durden instructed Mrs. Martin to return to the emergency room if her pain worsened, if she experienced vomiting, or if she developed a fever.

Appellants produced the affidavit of Dr. Maat to controvert Dr. Durden's affidavit on standard of care, breach, and proximate cause. According to Dr. Maat, the standard of care in treating Mrs. Martin included:

1. a rectal examination,

2. a pelvic examination,

3. an evaluation for costovertebral tenderness,

4. an abdominal film series,

5. a serum chemistry analysis,

6. a period of adequate observation, and

7. a surgical consultation and/or a compression ultrasound.

Dr. Maat pointed out that Dr. Durden did not perform any of these procedures. Dr. Maat further explained that any of the above procedures, which, if performed, would have indicated that Mrs. Martin had appendicitis requiring immediate treatment.

In his reply brief, Dr. Durden argues that the trial court granted summary judgment solely on the basis of lack of proximate cause. A review of Dr. Durden's motion for summary judgment reflects that he sought dismissal of appellants' claims on both compliance with the standard of care and lack of proximate cause and that the trial court granted summary judgment without stating any specific basis.

We conclude there is some evidence that material fact issues exist regarding the applicable standard of care and Dr. Durden's breach of that standard. Therefore, a grant of summary judgment on this ground would be error. Dr. Durden, however, also moved for summary judgment on the issue of proximate cause. We must now determine wheth-

er the judgment may be affirmed on that basis.

### Proximate Cause

 In determining whether a fact issue exists regarding proximate cause, the general rule is that proof of causation must go beyond a showing of a possibility that the plaintiff's injuries arose from the defendant's negligence or lack of skill. *Hart*, 399 S.W.2d at 792–93; *Valdez v. Lyman–Roberts Hosp., Inc.*, 638 S.W.2d 111, 114 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Similarly, mere speculation or conjecture is not sufficient to establish a causal connection between the defendant's conduct and the plaintiff's injuries. *Campos v. Ysleta General Hosp.*, 836 S.W.2d 791, 794 (Tex.App.—El Paso 1992, writ denied). Rather, the plaintiff must produce evidence establishing that there is at least a "reasonable medical probability" that the defendant's alleged negligence caused the plaintiff's injuries. *Tilotta*, 752 S.W.2d at 164.

 Dr. Durden argues that appellants'medical expert cannot establish the requisite causal link between the alleged negligence and Mrs. Martin's injuries. Specifically, Dr. Durden argues Dr. Maat's affidavit is conclusory, speculative, and based solely on mere possibilities, not reasonable medical probability. In his affidavit, Maat explains the importance of early diagnosis:

> The role of early diagnosis and treatment in decreasing morbidity and mortality is a principle repeatedly emphasized in textbooks and to medical students, interns, and residents in training.2000 deaths yearly are attributed to complications of ruptured appendices. Females who have an appendix rupture experience a four-fold increased rate of infertility. Rupture results in the formation of adhesions (scar tissue) which may result in bowel obstruction, chronic abdominal pain, and chronic pelvic pain. These sequelae may not present for decades after the initial event. For the aforementioned reasons, it is essential to always consider appendicitis in every patient with abdominal pain. Observation until typical symptoms or signs of peritonitis develop is ill-advised. When the diagnosis is uncertain, further observation and serial physical examination, surgery consultation, and/or ultrasound evaluation is indicated.

Based on a reasonable medical probability, Dr. Maat concluded Dr. Durden's breach of the standard of care was a proximate cause of Mrs. Martin's injuries:

> As a proximate cause of Dr. Durden's breach of the standard of care, Mrs. Martin had to undergo more extensive medical treatment, and she is at an increased risk for bowel obstruction, chronic pelvic and abdominal pain syndromes, and infertility.

> The above opinions are based on my education, training, experience, and familiarity with the standard of care for medical professionals in the state of Texas. These opinions are based upon a reasonable medical probability. I am familiar with the facts and data relied upon by experts in my field in forming opinions and inferences in the subject matters contained in this affidavit. The medical records I have reviewed in forming the opinions are of a type reasonably relied upon by experts in my field of training in forming opinions and inferences on the topics discussed in this affidavit.

We believe the appellants' summary judgment proof was sufficient to create a fact issue regarding the proximate cause of Mrs. Martin's injuries. The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548. As a reviewing court we take as true all evidence in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548–49. Thus, we conclude there is some evidence that material fact issues exist regarding the proximate cause of Mrs. Martin's injuries.

Appellants' point of error is sustained.

The judgment of the trial court is reversed and remanded for trial on the merits.