Hallie SUNSINGER, Appellant,

v.

Raoul PEREZ, M.D., a/k/a Ray Perez, individually and d/b/a Raoul Perez, M.D. and Associates, Appellee.

No. 09–98–103 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 14, 1999.

Decided April 6, 2000.

**2.** The Reeders' brief fails to address the no- evidence portion of their motion.

Guy E. Hopkins, Paula E. Crow, Guy E. Hopkins & Associates, Conroe, Leslie Werner deSoliz (On Appeal Only), Victoria, for appellant.

James B. Lewis, Glover, Anderson, Lewis & Prebeg, P.C., Houston, for appellee.

Before WALKER, C.J., BURGESS and HILL,[1] JJ.

## OPINION

JOHN HILL, Justice (Assigned).

Hallie Sunsinger appeals from a summary judgment that she take nothing in her claim against Raoul Perez, M.D., a/k/a Ray Perez, individually and d/b/a Raoul Perez, M.D. and Associates. She contends in five issues that the trial court erred in granting summary judgment; in a sixth issue, she urges that the trial court erred by not granting her leave to file a second amended petition.

We affirm because the trial court did not err in granting the summary judgment and because the trial court did not abuse its discretion by not granting Sunsinger leave to file a second amended petition.

This cause of action arose after Dr. Perez, who practices general medicine and family practice, had consensual sexual relations with Sunsinger. In her first amended petition, Sunsinger alleges that she suffered injuries as a result of the negligence, gross negligence, breach of warranty, and/or medical malpractice of Perez as a result of those relations. Specifically, she asserts that he was negligent in: (1) mishandling transference phenomenon and becoming sexually involved with her; (2) failing to properly diagnose her psychological condition; (3) failing to refer her for psychological treatment; and (4) attempting to treat her for psychological

---

1. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1998).

problems without proper expertise. She further alleges that he was grossly negligent.

Perez moved for summary judgment, presenting evidence that, with respect to all of Sunsinger's allegations of negligence, his actions were within the applicable standard of care. In her response, Sunsinger asserts that Dr. Perez mischaracterizes her claim when he insists that it is solely a medical malpractice claim; she indicates that it is also a general negligence claim. She insists that Dr. Perez's affidavit testimony is incompetent because medical records referred to in the affidavit are not attached to the affidavit and because he is not qualified to express his opinion with respect to the standard of care for the diagnosis, care, or treatment of transference. She also argues that Dr. Perez's affidavit contradicts his deposition testimony, thereby creating a material fact issue. Sunsinger did not present any summary judgment evidence from any health care provider that Dr. Perez's actions were not within the applicable standard of care.

■ This is not a no evidence motion for summary judgment. In this type of motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ In a case where a defendant physician has presented an affidavit detailing his or her treatment and attesting that his or her actions were within the applicable standard of care and the plaintiff fails to present summary judgment evidence by an appropriate expert that the physician's actions were not within the applicable stan-

dard of care, the trial court does not err in granting summary judgment with respect to the plaintiff's claim for medical malpractice. *See Perez v. Cueto,* 908 S.W.2d 29, 31–32 (Tex.App.—Houston [14th Dist.] 1995, no writ). The only other claim that Sunsinger asserted was a claim for breach of warranty. Dr. Perez stated in his affidavit that he made no warranties to Sunsinger. She has presented no summary judgment evidence to contradict Dr. Perez's statement. We therefore conclude that the trial court did not err in granting summary judgment that Sunsinger take nothing as to Dr. Perez.

■ In issue two, Sunsinger argues that the trial court erred to the extent that it granted summary judgment on one basis asserted by Dr. Perez, that basis being that she failed to allege an actionable case because there is no case for liability based upon sexual relations between a medical doctor, not involved in some type of psychiatric, psychological, or mental therapeutic care, and his or her patient. She insists that Dr. Perez should have brought special exceptions and allowed her to replead. She presents no authority that would support the existence of such a cause of action, nor does she state how she could have repleaded in such a way that would have presented a proper cause of action. She appears to assert that there is a cause of action for negligently having sexual relations when there is an existence of any nature of professional relationship and that such a cause of action does not fall within the realm of professional malpractice. She has not presented any authority for such a cause of action, or for her assertion that it would not fall within the realm of professional malpractice, and we are not aware of any. We also note that in granting summary judgment, the trial court did not state upon which grounds it was granting summary judgment; it may very well be that the trial court granted summary judgment upon the basis that we have already related, that being Sunsinger's failure to present

summary judgment proof to show that Dr. Perez's conduct was outside the applicable standard of care. We overrule Sunsinger's contentions presented in issue two.

Sunsinger asserts in issue three that the trial court erred by granting the summary judgment because Dr. Perez's affidavit is incompetent. She initially refers us to an isolated statement in his affidavit that, "Based upon that conversation, I believed as of November 12, 1991, and it is my expert opinion that Ms. Sunsinger and I no longer had a physician/patient relationship and that she had terminated it as of that date." Just previously, Dr. Perez had stated in his affidavit that Sunsinger had informed him on that date that she was moving to the Dallas area, would be seeing another physician there, and would be requesting a copy of her records in the near future. She argues that summary judgment should not be granted because statements of intent in summary judgment evidence are not readily controvertible. We note, however, that in any event her status as a patient is not material because, even if she was a patient, her claim for medical malpractice must fail because she failed to present summary judgment evidence from an appropriate health professional to refute Dr. Perez's assertion that his conduct was within the applicable standard of care.

■■■ Sunsinger also urges that she was not required to present the sworn testimony of a health care provider to refute Dr. Perez's testimony regarding the standard of care with respect to what she refers to as the transference phenomenon because he is not an expert psychologist or psychiatrist and he presented no summary judgment testimony of such an expert mental health professional. As previously noted, Dr. Perez is an M.D. who has a general medicine and family practice. Liability in a medical negligence case is determined by a doctor of the same school of practice as the defendant. *See Hart v. Van Zandt*, 399 S.W.2d 791, 797 (Tex. 1965). Consequently, Dr. Perez's testimony is competent on the issue of his liability.

That being the case, Sunsinger was required, in the face of Dr. Perez's affidavit, to present the affidavit of an appropriate expert to refute his assertion that his conduct was within the applicable standard of care. Even if Dr. Perez were treating her as a general practitioner for a psychiatric or psychological condition, he was competent to testify that such treatment was within the applicable standard of care. Sunsinger has provided no authority showing that a defendant general practitioner is required to obtain the affidavit of a specialist in order to sustain a summary judgment where the general practitioner is treating a medical condition that falls within a recognized medical specialty, and we are not aware of any.

Sunsinger also asserts that Dr. Perez's affidavit is incompetent because he failed to attach any of her medical records to his affidavit. Rule 166a (f) of the Texas Rules of Civil Procedure provides that sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached to or served with the affidavit. At the beginning of his affidavit, Dr. Perez stated that, "I have personal knowledge of the facts, statements, opinions, and attachments contained herein and attached hereto based on my care and treatment of HALLIE SUNSINGER, my review of her medical records, and my education, training, and experience in the practice of medicine, and they are true and correct." He did not attach a copy of Sunsinger's medical records to his affidavit.

■■■ In her response to Dr. Perez's motion for summary judgment, Sunsinger objected to Dr. Perez's affidavit, in part because of his failure to attach her medical records to the affidavit. She did not obtain a written ruling on her objection from the trial judge. If an objection to the failure to attach records to an affidavit in support of a motion for summary judgment is made at trial, but no written ruling is obtained from the trial judge, the objection is waived if the objection relates to a defect of form and not of substance. *See*

*Watts v. Hermann Hospital,* 962 S.W.2d 102, 105 (Tex.App.—Houston [1st Dist.] 1997, no writ); *Roberts v. Friendswood Development Co.,* 886 S.W.2d 363, 365 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Although there is possibly a conflict among courts of appeals as to whether the failure to attach records to an affidavit in support of summary judgment is a defect of form or substance, we agree with those courts that hold that such a failure is a defect of form, not of substance. *See Mathis v. Bocell,* 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no writ); *Martin v. Durden,* 965 S.W.2d 562, 565 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). Sunsinger, in her objection to the affidavit, referred the trial court to the case of *Noriega v. Mireles,* 925 S.W.2d 261 (Tex.App.—Corpus Christi 1996, writ denied), as authority for her contention that the defect in the affidavit is one of substance rather than form. Rather, the court in *Noriega* held that where there is no dispute about what treatment the patient received, but rather what treatment the patient should have received, but did not, and whether the treatment met the applicable standard of care, it is a formal, rather than a substantive defect. *See id.* at 265. We see no reason why the rule would not be the same in a case such as this where there is no dispute about what treatment the patient received, but what the plaintiff alleges that the physician should not have done, but did, and whether that conduct was violative of the applicable standard of care. We overrule Sunsinger's contentions in issue three.

Sunsinger asserts in issue four that the trial court erred by granting summary judgment because there is a material fact issue as to whether a doctor-patient relationship existed from November 12, 1991, until December 26, 1991 because Dr. Perez indicates that he believed that the doctor-patient relationship terminated on November 12, whereas he acknowledges examining Sunsinger and providing her medication on December 26, 1991, when she saw him at his office after previously moving from the area. Despite Sunsinger's assertion to the contrary, we construe her petition to allege only a cause of action for medical negligence and breach of warranty. Even if Sunsinger was Dr. Perez's patient at the time they had sexual relations, the issue as to whether the doctor-patient relationship existed at the time they had such relations is not a material fact issue, where summary judgment is warranted based upon her failure to present expert testimony in order to show that Dr. Perez's conduct, including his having sexual relations with her, was outside the applicable standard of care. We overrule Sunsinger's contentions contained in issue four.

█ Sunsinger argues in issue five that the trial court erred in granting summary judgment because the motion did not address her general negligence cause of action. While Sunsinger does allege that she seeks money damages as compensation for her injuries sustained as a result of the "negligence, gross negligence, breach of warranty, and/or malpractice of [Dr. Perez]," she then alleges specific acts of negligence, all of which are related to medical negligence. As we have previously noted, a fair reading of Sunsinger's petition, taken as a whole, alleges only a cause of action for medical negligence and breach of warranty, not negligence generally. We overrule her contentions as contained in issue five.

Sunsinger, in issue one, merely presents the general issue that the trial court erred in granting summary judgment for Dr. Perez, without presenting any argument or authority on its merits. Her specific bases for her contention that the trial court erred in granting the summary judgment motion are contained in issues two, three, four, and five. Because in our consideration of those issues we have concluded that the trial court did not err in granting summary judgment, we overrule Sunsinger's contention as contained in issue one.

Sunsinger asserts in issue six that the trial court erred by not granting her leave to file a second amended petition. She sought to file the amended petition on December 1, 1997, shortly more than one hour before the trial court signed the order granting summary judgment. The record reflects that the petition had not even been prepared, much less sought to have been filed, at the time that the trial court granted summary judgment in favor of Dr. Perez. The trial court did not abuse its discretion by not granting Sunsinger leave to file an amended petition after the granting of summary judgment in favor of Dr. Perez. *See Morris v. Hargrove*, 351 S.W.2d 666, 668 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.). Rule 63 of the Texas Rules of Civil Procedure provides that any pleadings offered for filing within seven days of the date of trial shall be filed only after leave of the judge is obtained, which leave shall be granted unless there is a showing that such filing would operate as a surprise to the opposite party. In this case Dr. Perez was entitled to summary judgment on the basis of the pleadings that were before the court at the time the court ruled on his motion. The second amended petition ultimately filed alleged for the first time that Dr. Perez committed the torts of assault and battery against her in that he intentionally and knowingly caused physical contact with her when he knew or should have reasonably believed that she would regard this contact as offensive and provocative. We hold that the amendment itself constitutes a sufficient showing of surprise to Dr. Perez to justify the trial court's failure to grant Sunsinger leave to amend her petition.

Sunsinger urges that there was no surprise, that her tort and battery allegation was not a new cause of action but one that was apparent from the context of the allegations of her previously filed amended petition. We disagree. There was absolutely nothing in the previously filed amended petition alleging medical liability and breach of warranty that would have put Dr. Perez on notice that she was claiming that Dr. Perez had committed an assault and battery against her or that she regarded his conduct as offensive and provocative at the time that it occurred. We overrule her contention as presented in issue six.

The judgment is AFFIRMED.

DON BURGESS, Justice, dissenting.

I respectfully dissent. The pleadings allege Ms. Sunsinger was taken advantage of by her treating physician, Dr. Perez. Those pleading allege, among other things, that Dr. Perez was negligent in mishandling the "transference" phenomenon and in failing to refer Ms. Sunsinger for psychological treatment. The majority holds Dr. Perez's affidavit is competent summary judgment evidence on this issue. I disagree.

*Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 828–29 nn. 4–5 (Tex.App.—Dallas 1992, writ denied), is instructive on transference:

Although no Texas court has addressed the issue of when sexual contact by a physician with a patient (FN4) is construed to be the rendition of professional medical services, (FN5) several other jurisdictions have considered this issue. The general rule in other jurisdictions is that the nature of the physician-patient relationship determines whether sexual contact should be considered to be based upon the rendition of professional services. These courts have held that sexual contact between physician and patient will not be considered by the courts to have arisen out of the rendition of professional services unless the patient is receiving psychotherapeutic treatment involving the transference phenomenon. The transference phenomenon occurs in the relationships of psychiatrists, psychologists, therapists, and similar professionals with their patients. Transference is "[t]he process whereby the patient displaces [onto] the therapist feelings, attitudes

and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly." *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 700 (Minn.1990) (quoting S. WALDRON–SKINNER, A DICTIONARY OF PSYCHOTHERAPY 364 (1986)). Thus, the therapist, as part of the therapeutic relationship, serves as a substitute for the person with whom the patient has had difficulty communicating or acting out feelings. *See Simmons v. United States,* 805 F.2d 1363, 1365 (9th Cir.1986); *St. Paul Fire & Marine Ins. Co. v. Love,* 447 N.W.2d 5, 8 (Minn.Ct. App.1989), *aff'd,* 459 N.W.2d 698 (Minn. 1990). Because the relationship between the therapist and the patient is crucial to the recovery of the patient, the mishandling of that relationship by the therapist's becoming sexually involved with the patient has been declared by many courts to be malpractice. *See Simmons,* 805 F.2d at 1365–66 (and cases cited therein); *Love,* 459 N.W.2d at 702.

Where the physician-patient relationship does not involve the transference phenomenon as part of the treatment of the patient, courts have held that sexual relations between physician and patient do not involve the rendition of professional services. *E.g., Standlee v. St. Paul Fire & Marine Ins. Co.,* 107 Idaho 899, 693 P.2d 1101, 1102 (App.1984) (doctor's sexual assault on minor patient in hospital did not "result from actions necessary in physician's work"); *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 683 P.2d 440, 444 (App.1984) (doctor's sexual assault on minor patient whom he had drugged did not involve the "providing or withholding of professional services"); *St. Paul Fire & Marine Ins. Co. v. Quintana,* 165 Mich. App. 719, 419 N.W.2d 60, 62 (1988) (electroencephalograph technician's sexual assault on patient was not committed "in connection with professional services rendered or which [should] have been rendered"); *Smith v. St. Paul Fire & Marine Ins. Co.,* 353 N.W.2d 130, 132 (Minn.1984) (doctor's sexual assaults on minor patients in medical clinic did not involve "[provision] or withholding of professional services"); *South Carolina Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry,* 291 S.C. 460, 354 S.E.2d 378, 381 (1987) (dentist's taking of "indecent liberties with private parts of" patients did not involve rendition of professional services); *Washington Ins. Guar. Ass'n v. Hicks,* 49 Wash. App. 623, 744 P.2d 625, 627–28 (1987) (chiropractor who had sexual intercourse with patient during treatment session did not do so "in the furnishing of professional medical ... services").

FN4. Whether Rose Cluett was a "patient" was disputed by the parties. Although the argument that Rose Cluett was a patient of Capino's under the facts of this case is tenuous at best, we will assume, without deciding, that a doctor-patient relationship existed between her and Capino.

FN5. The Fort Worth court decided a case involving sexual relations between a psychologist and his patient on statute-of-limitations grounds. *Lenhard v. Butler,* 745 S.W.2d 101 (Tex.App.—Fort Worth 1988, writ denied). The Texarkana court did not reach the issue of a plastic surgeon's liability for negligence for having sexual relations with a patient. *Wall v. Noble,* 705 S.W.2d 727, 731 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.). The Texas Supreme Court has suggested that a patient may be able to bring a cause of action for medical malpractice against a psychiatrist if the psychiatrist has sexual relations with the patient. *Dennis v. Allison,* 698 S.W.2d 94, 95–96 (Tex.1985). A case involving the liability of a medical partnership for the tortious conduct of one of the partners in alienating the affection of a patient from her husband reached the supreme court, but that case involved only the issue of the liability of

the partnership for protecting its patients from the tortious conduct of one of its partners, not whether the alienation of affection was the result of the rendition of professional services. *Kelsey–Seybold Clinic v. Maclay,* 466 S.W.2d 716 (Tex.1971).

Similarly, *Lenhard v. Butler,* 745 S.W.2d 101, 103 n. 2 (Tex.App.—Fort Worth 1988, writ denied), noted:

> Where a therapist mishandles transference and becomes sexually involved with his patient, courts commonly hold such action to constitute malpractice. (FN2)
>
> FN2. *See e.g. Simmons v. United States,* 805 F.2d 1363 (9th Cir.1986); *Waters v. Bourhis,* 40 Cal.3d 424, 220 Cal.Rptr. 666, 709 P.2d 469 (1985); *Cotton v. Kambly,* 101 Mich.App. 537, 300 N.W.2d 627 (1980); *Roy v. Hartogs,* 85 Misc.2d 891, 381 N.Y.S.2d 587 (1976); *Zipkin v. Freeman,* 436 S.W.2d 753 (Mo. 1968). *See also: Psychiatry's Problem with No Name: Therapist–Patient Sex,* 37 Am.J. Psychoanalysis 43, 48–49 (1977).

Our Supreme Court in *Broders v. Heise,* 924 S.W.2d 148, 152–53 (Tex.1996), has enlightened us as to the "expert" issue:

> Moreover, given the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. Such a rule would ignore the modern realities of medical specialization. The Heises' proposed rule would also eliminate the trial court's role of ensuring that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion. After all, the proponent of the testimony has the burden to show that the expert "possess[es] special knowledge as to the very matter on which he proposes to give an opinion." 2 RAY, TEXAS LAW OF EVIDENCE: CIVIL AND CRIMINAL § 1401 at 32 (Texas Practice 3d ed.1980)....

Dr. Perez's affidavit does no more than establish his credentials as a family practitioner; it does not establish his knowledge of the transference phenomenon. Consequently, his affidavit was not competent summary judgment evidence on this issue and the summary judgment should not have been granted. I would reverse and remand for a new trial.