**Thomas J. KLUG, M.D., Appellant,**

v.

**Hilario RAMIREZ and Janie C. Ramirez, Individually and as Next Friends of Lisa L. Ramirez, Appellees.**

No. 13–91–076–CV.

Court of Appeals of Texas, Corpus Christi.

May 21, 1992.

Paul M. Green, Karen McMurry, Lang, Ladon, Green, Coghlan & Fisher, San Antonio, for appellant.

Maria Estella Perez, Brownsville, for appellee.

Before NYE, C.J., and BISSETT[1] and SEERDEN, JJ.

## OPINION

BISSETT, Justice (Assigned).

This is a medical malpractice case. Thomas J. Klug, a defendant in the trial court (hereafter referred to as "Dr. Klug") appeals from a judgment, following a jury trial, in which Hilario Ramirez and Janie C. Ramirez, parents of the minor child Lisa L. Ramirez and plaintiffs in the trial court (hereafter called "appellees"), next friend of Lisa L. Ramirez (hereafter called "Lisa"), were awarded damages in amount of $352,500.00, pre-judgment interest in the

---

**1.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

amount of $66,003.29, post-judgment interest at the rate of 10% per annum, compounded annually until the judgment is paid and court costs. We reverse and render.

Suit was filed on April 9, 1990. The defendants were William Grimes ("Dr. Grimes"), d/b/a Valley Children's Clinic, Valley Children's Clinic, P.A., Dr. Klug and Valley Baptist Medical Center. Trial commenced on July 10, 1990. At the close of the evidence, all defendants filed motions for instructed verdict. The motion by Dr. Klug was denied, and the motions of the remaining defendants were granted. Judgment was signed on October 15, 1990. Dr. Klug's motions for judgment notwithstanding the verdict and for a new trial were denied.

Appellees alleged generally that: on or about February 9, 1984, Lisa, then 15 years of age, started having a strong burning pain in her right lower abdomen, and on February 10, 1984, they took her to the Valley Children's Center (the "hospital") in Harlingen, Texas, for examination. Dr. Grimes made a quick examination of Lisa and told them that she was suffering from gastroenteritis and sent her home with medication; at about 12:30 a.m. the following day, appellees took Lisa to the hospital where Dr. Grimes suspected that Lisa may have appendicitis. Dr. Grimes then called Dr. Klug, a general surgeon, at about 1:00 a.m. on February 11, 1984 and told him of Lisa's condition and his suspicions; Dr. Klug scheduled surgery for 10:45 a.m. and performed an appendectomy on Lisa shortly thereafter. Dr. Klug discovered that the appendix had ruptured before the operation and that peritonitis had set in; Lisa was discharged from the hospital by Dr. Klug on February 18, 1984; she was re-admitted to the hospital on February 22, 1984. She was later discharged from the hospital by Dr. Klug, and appellees then sought treatment for Lisa elsewhere.

## THE PLEADINGS

Appellees further alleged in some detail that Dr. Klug, in misdiagnosing Lisa's condition and in administering incorrect, insufficient or no medication and failing to provide prompt surgical treatment and/or making an untimely discharge of Lisa on February 18, 1984, was negligent in one or more of the following particulars which, taken together or separately, constituted a direct and proximate cause of Lisa's injuries and damages; they further alleged that he failed to use reasonable skill, care and diligence to correctly diagnose the injury to Lisa's abdomen, or to correctly combat the infection process with antibiotics in a timely manner; that he failed to order and have made all necessary laboratory work "to ascertain the persistent infection during the first period of hospitalization;" he failed to diagnose acute appendicitis and remove the appendix within 2 to 4 hours after consultation with Dr. Grimes; he violated the generally established standards in discharging Lisa from the hospital on February 18, 1984, without a) determining the source of Lisa's continued infection, and b) without first stabilizing her continued high grade fever and her need for narcotic pain medication for at least 24 consecutive hours prior to her discharge; he also violated the generally established standards in the community when he discharged Lisa within minutes of disconnecting intravenous medication and without supervising for at least 24–48 hours the effects of pills taken orally; he failed to insure that Lisa received the necessary medical care and attention that was necessary with respect to her treatment upon her admission to the hospital; he further violated generally established standards in the community when he failed on February 20, 1984 and/or February 21, 1984 to immediately re-admit Lisa to the hospital and order any and all available diagnostic testing to determine the cause of continued infection and high grade fever; and his conduct from February 11, 1984, to February 22, 1984, amounted to an abandonment of Lisa.

## POINTS OF ERROR

■ Twelve points of error are presented by Dr. Klug. The jury found in its answer to Question No. 1 that the negligence of Dr. Klug proximately caused injuries to Lisa. Dr. Klug contends in his

second and third points that the trial court erred in denying his motions for instructed verdict and for judgment notwithstanding the verdict, and in rendering judgment for the appellees on the grounds that "there was legally insufficient evidence" that Dr. Klug was negligent (second point), and that Dr. Klug's "negligence, if any, was a proximate cause of any harm to appellees" (third point).

The appellate court, in reviewing a "no evidence" point, must consider only the evidence and reasonable inferences that tend to support a jury finding and must disregard all evidence and inferences to the contrary. *Lewelling v. Lewelling,* 796 S.W.2d 164 (Tex.1990); *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex. 1988); *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). However, if there is a complete absence of evidence of a vital fact, or, if the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, a no evidence point of error must be sustained. *Lewelling,* 796 S.W.2d at 166; *Kindred v. Con/Chem., Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

It has long been established that in a medical malpractice action, the burden of proof is upon the plaintiff to establish negligence on the part of the defendant by a preponderance of the evidence through competent medical expert testimony. *Duff v. Yelin,* 751 S.W.2d 175 (Tex.1988); *Hood v. Phillips,* 554 S.W.2d 160 (Tex.1977); *Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703 (Tex.1970); *Hart v. Van Zandt,* 399 S.W.2d 791 (Tex.1965); *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949). The same is true as to the element of proximate cause. *Duff,* 751 S.W.2d at 176. To be entitled to submit the issue of proximate cause, the plaintiff must prove a causal connection between the act of negligence and subsequent injury beyond the point of mere conjecture. *Lenger,* 455 S.W.2d at 706. Absent such evidence as to either issue, the plaintiff cannot survive a motion by the defendant for an instructed verdict. *Duff,* 751 S.W.2d at 176; *Rodriguez v. Reeves,* 730 S.W.2d 19, 21 (Tex. App.—Corpus Christi 1987, no writ).

The necessary elements of medical malpractice are 1) the duty of the doctor to act according to a certain standard 2) breach of the applicable standard 3) injury or harm to the plaintiff, and 4) causal connection between the breach of the applicable standard of care and the injury or harm. *Pinckley v. Dr. Francisco Gallegos, M.D.,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

The Supreme Court said in *Hart v. Van Zandt,* 399 S.W.2d 791, 792–793 (Tex.1965), a medical malpractice case:

> In determining negligence in a case such as this, which concerns the highly specialized art of treating disease, the court and jury must be dependent on expert testimony. There can be no other guide, and where want of skill and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. The burden of proof is on the plaintiff to show that the injury was negligently caused by the defendant and it was not enough to show the injury together with the expert opinion that it might have occurred from the doctor's negligence and from other causes not the fault of the doctor. Such evidence has no tendency to show that negligence did cause the injury. *Ewing v. Goode,* 78 F. 442, 444 (C.C.Ohio, 1897); *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949); *Porter v. Puryear,* 153 Tex. 82, 262 S.W.2d 933 (1954).

> In determining the question of proximate cause, the general rule is "that proof of causation must be beyond a showing of a possibility that the injuries arose from the defendant's negligence or lack of skill, since the jury will not be permitted to speculate as to the cause of the injury. Thus where the evidence most favorable to the plaintiff develops more than one equally probable cause, for one or more of which defendant is not responsible, the plaintiff has failed to sustain his burden of proof." 13 A.L.R. 2d 22. But, as stated by this Court in *Porter v. Puryear,* supra, "[t]he vital inquiry in any case involving proximate cause is wheth-

er the negligent act set in motion a natural and unbroken chain of events that led directly and proximately to a reasonably foreseeable injury or result." (262 S.W.2d 933, 936).

## UNDISPUTED FACTS

Dr. Klug, a general surgeon who had practiced medicine in Harlingen since 1961, received a telephone call from Dr. William Grimes, a board-certified pediatrician, at approximately 1:15 a.m., on February 11, 1984, concerning Lisa, age 15, who was then in the emergency room of the hospital. He was informed by Dr. Grimes that Lisa had been seen by him earlier in his office on the morning of February 10, 1984, and had been diagnosed by Dr. Grimes as suffering from gastroenteritis. Her condition had acutely changed shortly before her arrival in the emergency room, leading Dr. Grimes to suspect that she had appendicitis. Dr. Klug then told Dr. Grimes to start preparing Lisa for anticipated surgery to be done by him once she was stabilized and hydrated. Lisa was still dehydrated at 5:00 a.m. on February 11, 1984, and Dr. Klug decided to wait a few hours before operating as he did not think it best to operate while she was still dehydrated; he "wanted to get a few more hours of fluids into her." He operated on Lisa at about 10:45 a.m., and the findings of surgery showed that her appendix had burst and peritonitis had set in. Lisa was discharged from the hospital on February 18, 1984, and was seen by Dr. Klug at his office for a follow-up on February 20 and 21. Lisa was re-admitted to the hospital on February 22, 1984, for a suspected abscess in the abdominal cavity. Dr. Klug then performed a second surgical procedure the next day, at which time a peritoneal abscess was discovered and drained. Medications were changed. Lisa was discharged from the hospital on March 2, 1984. Lisa was last seen by Dr. Klug in his office on March 7, 1984, and she was asked to return for a check-up on March 9, 1984; she did not keep the appointment.

---

2. A process "to look into the abdominal cavity."

## APPELLEE'S MEDICAL EXPERT'S TESTIMONY

Dr. Ruben D. Martinez caused Lisa to be admitted to the Valley Baptist Medical Center in Harlingen on August 9, 1988, for a diagnostic laparoscopy[2] to evaluate her complaints of pelvic pain and menstrual cramps. He found that her ovaries were about 85% covered by adhesions (scars), and there was some scarring on her fallopian tubes. He further found that the abdominal area was clean, that no pus was found in her abdominal cavity, and there was no continuing or current infection.

The medical expert witness offered by appellees was Dr. Martinez, a Board Certified Obstetrician/Gynecologist and "pelvic" surgeon. He testified as to the standard of care, as follows:

> The standard of care as I see it in '84 in training and now is that one does not dismiss a post-operative patient who is still running a clinical fever, who has laboratory evidence consistent with persistent infection until I, the surgeon, am convinced that this fever is not due to significant or serious persistent infection.

Counsel for Dr. Klug objected to the above answer by Dr. Martinez and requested that it be stricken. The court then stated:

> As far as the last portion is concerned, that will be struck. The jury is instructed to disregard the last portion of the doctor's testimony.

Whereupon, counsel for the appellees asked Dr. Martinez the following question:

> Q. What steps should have been taken to meet the standards of good medical care prior to discharging Lisa Ramirez with persistent fever, elevated blood count, continued infection in 1984?

Counsel for Dr. Klug objected to the question and the court sustained the objection. There were no objections to the following questions asked Dr. Martinez by counsel for the appellees, or the answers thereto by the doctor.

> Q. What steps should have been taken to meet good standards of medical

practice in discharging this patient in 1984? Prior to her discharge what should the doctor have done?

A. The patient should have been evaluated further to identify why she was still febrile.

THE COURT: Which meant fever?

THE WITNESS: Yes, to identify why she was still running a fever. Tests.

Dr. Martinez was also asked to respond to the following questions:

Q. Now, Dr. Martinez, when you were talking about the line of questioning posed to you by Mr. Green, are you familiar with the medical standard in 1984 in Harlingen, Cameron County, Texas regarding virulent infections process?

A. I believe that I am.

Q. Now, sir, in 1984 in Harlingen, Cameron County, Texas was it considered good medicine to discharge a patient with a virulent infection?

A. I don't think it has ever been, and I'm not sure I would characterize it as good. I'm not sure it is appropriate to discharge anyone with a virulent infection.

Dr. Martinez further testified: that he did not know whether Lisa was infertile; that it was clear that Lisa had had appendicitis and an infection in the abdominal and pelvic region because of the appendicitis; that the condition which he found when he conducted his diagnostic laparoscopy were consistent with a history of a ruptured appendix; and that it was not unusual to find such conditions (adhesions) in a perforated appendix case. He said that a search of the record in this case failed to reveal any evidence which would support the submission of any issues inquiring as to the conduct of Dr. Klug and its causal connection to the appellees' claimed damages. At most, Dr. Martinez was critical of Dr. Klug for having discharged Lisa without conducting a further evaluation of her continued fever and infection. At no point, however, did Dr. Martinez ever testify that the discharging of Lisa from the hospital on February 18, 1984, caused any of the harm for which appellees claimed damages in

this lawsuit. On the contrary, Dr. Martinez testified that Lisa had an infection in the abdominal and pelvic area by reason of her appendicitis; that his findings upon laparoscopy were consistent with a history of appendicitis; and that the adhesions (scarring) which Lisa had were entirely consistent with the disease process of appendicitis for which Dr. Klug *was not responsible*.

Appellees also contend, that because Dr. Klug discharged Lisa prematurely without conducting further studies to evaluate her persistent fever, she subsequently was caused to suffer pain with her menstrual cycle and faces the possibility of sterility. There is no evidence tending to prove that Dr. Klug's conduct caused these claimed damages. More importantly, there was no evidence tending to prove that Lisa's ultimate adversity would probably have been avoided if a further evaluation, or tests had been performed by Dr. Klug prior to February 18, 1984. Since proof of proximate cause is a necessary part of the appellees' case, and since the appellees wholly failed to meet their burden of proof, an instructed verdict should have been granted on behalf of Dr. Klug. *Glenn v. Prestegord*, 456 S.W.2d 901, 902 (Tex.1970).

Appellees also called Dr. Bruce Henderson as an expert witness (by video deposition), a pediatric surgeon practicing in Corpus Christi, Texas. Those portions of Dr. Henderson's deposition which were admitted into evidence under the rulings of the court did not establish negligence or proximate cause with respect to Dr. Klug's treatment of Lisa.

## CONCLUSION

There is no evidence that Dr. Klug committed any acts or omissions constituting negligence in his diagnosis, pre-operative, or by his ordering medications and changing medications, during his treatment of Lisa from February 11, 1984, until March 7, 1984. Dr. Martinez's testimony regarding the standard of medical care in Harlingen, Texas, in February of 1984, and the fact that Dr. Klug dismissed Lisa from the hospital on February 18, 1984, while she

was still running a fever is some evidence that Dr. Klug was negligent in that he violated the standard of care by dismissing Lisa under such conditions. Dr. Klug's second point of error is overruled.

There is, however, no evidence that such negligence proximately caused Lisa's injury adhesions or scarring. It is conclusively shown by the evidence that Lisa's injury or harm was caused solely by the abscess, which in turn was caused by the ruptured appendix that had occurred prior to the operation for appendicitis. Dr. Klug's third point is sustained.

In view of our sustaining Dr. Klug's third point of error and overruling his second point, it is not necessary that we decide the remaining ten points.

The judgment of the trial court is reversed and judgment is here rendered that the appellees, individually, and as next friends of Lisa, take nothing by their action against Dr. Klug.