NUMBER 13-99-017-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


THE ESTATE OF THEODORE

JENSEN, LARRY JENSEN AND

DORIS JENSEN Appellants,


v.



WILLIAM RESTREPO, Appellee.

____________________________________________________________________


On appeal from the 206th District Court of Hidalgo County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Yañez, and Seerden(1)


Opinion by Justice Yañez


 Appellants, Larry Jensen, Doris Jensen, and the Estate of
Theodore Jensen ("the Jensens"), appeal from a summary judgment in
favor of appellee, William Restrepo, M.D., in a medical malpractice
action. By a single issue, appellants contend the trial court erred in
granting appellee's no-evidence motion for summary judgment. We
affirm.

 On January 16, 1994, Theodore Jensen became ill and was taken
to McAllen Medical Center. The admitting physician was Jensen's
primary treating physician, Dr. Luis Arango. Arango had treated Jensen
on several other occasions and knew that Jensen had Parkinson's
disease and had been taking the drug Sinemet to control the disease. 
Although Jensen's family brought to the hospital a list of medications
that he was taking at home, including Sinemet, Arango's admission
orders did not represcribe Sinemet. 

 Arango arranged for Drs. Ruy Mireles-Quintanilla ("Mireles"), a
neurologist, and Restrepo, a nephrologist,(2) to see Jensen as consulting
physicians. Restrepo first saw Jensen on January 17, 1994. Based on
a physical examination of Jensen and a review of his pertinent medical
records and history, Restrepo ordered several laboratory tests. He
monitored and evaluated Jensen's kidney condition over the next two
days, and last saw Jensen on January 19, 1994.(3) At that time, he
concluded Jensen's kidney status had stabilized sufficiently that further
daily follow-up by a nephrologist was not needed. Restrepo noted on
the chart that he would see Jensen only on an as-needed, or "PRN,"
basis. 

 On January 19, 1994, Arango called one of the nurses at the
hospital, told her he was leaving town, and that the staff should contact
Restrepo if anything happened to Jensen during his absence.(4) Arango
did not return until January 24th. Mireles testified by deposition that
he saw Jensen on January 19th and again on the 20th. On the 20th,
Mireles noted in the file that he would "keep [Jensen] on Sinemet," and
signed off the case. On January 22, 1994, Jensen's son, Larry,
complained to the nursing staff that his father's condition had
significantly deteriorated. It was discovered that no doctor was
following Jensen. That same day, Jensen was seen by Dr. Savita
Koolwal, another nephrologist, and Mireles. Larry told Mireles that his
father had not been receiving Sinemet, and Mireles immediately ordered
the prescription re-instituted. Jensen's condition, however, continued
to deteriorate and he died in the hospital on February 6, 1994. 

 On March 29, 1996, the Jensens filed suit against the hospital and
five physicians.(5) Restrepo moved for summary judgment under Texas
Rule of Civil Procedure 166a(c) and 166a(i). See Tex. R. Civ. P. 166a(c)
and (i). He argued that the alleged departure from the standard of care
--- his failure to notice that Jensen was not receiving his home
medication and failure to so notify Arango --- did not proximately cause
Jensen's death because it is speculation to say whether Arango would
have altered his treatment of Jensen had he been aware of the
information. In response, the Jensens argued that if Restrepo had
continued to monitor Jensen's condition during Arango's absence
(which is what Arango testified by deposition that he expected),
Restrepo would have assumed the duties of an attending doctor, would
have checked the medication charts, and would have noticed that
despite Mireles's notation to continue Jensen on Sinemet, the
medication had neither been prescribed nor administered. The trial
court, without specifying rule 166a(c) or 166a(i) grounds, granted
Restrepo's motion, severed the claims against him, and ruled that the
Jensens take nothing on their claims against him. This appeal followed. 

Standard of Review

 In a traditional summary judgment proceeding, the standard of
review on appeal is whether the successful movant at the trial level
carried the burden of showing that there is no genuine issue of material
fact and that judgment should be granted as a matter of law. American
Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon
v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548 (Tex.
1985). Thus, the question on appeal is not whether the summary
judgment proof raises fact issues as to the required elements of the
movant's cause or claim, but whether the summary judgment proof
establishes, as a matter of law, that there is no genuine issue of
material fact as to one or more elements of the movant's cause or claim. 
Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970);
Noriega v. Mireles, 925 S.W.2d 261, 266 (Tex. App.--Corpus Christi
1996, writ denied). In resolving the issue of whether the movant has
carried this burden, all evidence favorable to the non-movant must be
taken as true and all reasonable inferences, including any doubts, must
be resolved in the non-movant's favor. Nixon, 690 S.W.2d at 548-49;
Noriega, 925 S.W.2d at 266. When the defendant is the movant and
submits summary judgment evidence disproving at least one essential
element of each of the plaintiff's causes of action, then summary
judgment should be granted. Grinnell, 951 S.W.2d at 425; Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

 When a motion is presented under Texas Rule of Civil Procedure
166a(i) asserting there is no evidence of one or more essential elements
of the nonmovant's claims upon which the nonmovant would have the
burden of proof at trial, the movant does not bear the burden of
establishing each element of its own claim or defense. General Mills
Restaurants, Inc. v. Texas Wings, Inc., 12 S.W.3d 827, 832 (Tex.
App.--Dallas 2000, no pet.); Lampasas v. Spring Ctr., Inc., 988 S.W.2d
428, 432-33 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Rather,
the burden shifts to the nonmovant to present enough evidence to be
entitled to a trial, i.e., evidence that raises a genuine fact issue on the
challenged elements. See Tex. R. Civ. P. 166a cmt. If the nonmovant is
unable to provide enough evidence, the trial judge must grant the
motion. See Lampasas, 988 S.W.2d at 433.

 A "no-evidence" summary judgment granted under rule 166a(i) is
essentially a pre-trial directed verdict, and we apply the same legal
sufficiency standard in reviewing a no-evidence summary judgment as
we apply in reviewing a directed verdict. Zapata v. Children's Clinic,
997 S.W.2d 745, 747 (Tex. App.--Corpus Christi 1999, pet. denied);
Moore v. Kmart Corp., 981 S.W.2d 266, 269 (Tex. App.--San Antonio
1998, pet. denied); Moritz v. Bueche, 980 S.W.2d 849, 853 (Tex.
App.--San Antonio 1998, pet. denied). We review the evidence in the
light most favorable to the party against whom the summary judgment
was rendered, disregarding all contrary evidence and inferences. 
Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997);
Whalen v. Condominium Consulting and Mgmt. Servs., Inc., 13 S.W.3d
444, 446 (Tex. App.--Corpus Christi 2000, pet. denied); Zapata, 997
S.W.2d at 747. A no-evidence summary judgment is improper if the
respondent brings forth more than a scintilla of probative evidence to
raise a genuine issue of material fact. Havner, 953 S.W.2d at 711;
Zapata, 997 S.W.2d at 747. Less than a scintilla of evidence exists
when the evidence is so weak as to do no more than create a mere
surmise or suspicion of a fact. Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983); Zapata, 997 S.W.2d at 747. More than a scintilla
of evidence exists when the evidence rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. 
Havner, 953 S.W.2d at 711; Zapata, 997 S.W.2d at 747. 

 If a summary judgment is granted generally, without specifying
the reason, it will be upheld if any ground in the motion for summary
judgment can be sustained. Bradley v. State ex rel. White, 990 S.W.2d
245, 247 (Tex. 1999) (citing Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995)); Weakly v. East, 900 S.W.2d 755, 758 (Tex.
App.--Corpus Christi 1995, writ denied).

Discussion


 The elements of a medical malpractice cause of action are: (1) the
duty of the physician to act according to a certain standard; (2) a breach
of that standard of care; (3) an injury; and (4) a causal connection
between the breach and the injury. Zapata, 997 S.W.2d at 747; Silvas
v. Ghiatas, 954 S.W.2d 50, 52 (Tex. App.--San Antonio 1997, writ
denied). In a medical malpractice case, the plaintiff must prove by
competent medical expert testimony that the defendant's negligence
proximately caused the plaintiff's injury. Duff v. Yelin, 751 S.W.2d 175,
176 (Tex. 1988); Klug v. Ramirez, 830 S.W.2d 801, 804 (Tex. App.--Corpus Christi 1992, no writ). Both establishing summary judgment
and precluding summary judgment are dependent upon expert
testimony. Martin v. Durden, 965 S.W.2d 562, 564 (Tex.
App.--Houston [14th Dist.] 1997, writ denied). On the proximate cause
element, the plaintiff must establish a causal connection beyond the
point of conjecture; proof of mere possibilities will not support the
submission of an issue to the jury. Duff, 751 S.W.2d at 176; Klug, 830
S.W.2d at 804. 

 Restrepo moved for summary judgment solely on the basis that
there are no genuine issues of material fact regarding causation, an
essential element of the Jensens' cause of action. In support of his
motion, Restrepo attached his affidavit, which stated that in his expert
opinion, based upon a reasonable degree of medical probability, nothing
he did or failed to do caused or contributed to Jensen's death. In
response, the Jensens contend that their summary judgment evidence(6)
raised a genuine fact issue as to whether Restrepo should have
continued to follow Jensen during Arango's absence.(7)
 Because
Restrepo's motion for summary judgment challenged the Jensens'
evidence regarding the element of causation, and accordingly, the
Jensens' summary judgment evidence sought to raise a fact issue
solely and specifically as to whether Restrepo should have followed
Jensen's progress, we express no opinion as to whether Restrepo's
alleged failure to notice that Jensen was not receiving Sinemet fell
below the standard of care for a consulting physician. Therefore, the
only question before us is whether the Jensens' summary judgment
evidence constitutes more than a "scintilla" of evidence raising a
genuine issue of material fact regarding whether Restrepo should have
followed Jensen's progress during Arango's absence. 

 The components of proximate cause are cause in fact and
foreseeability. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d
472, 477 (Tex. 1995); Travis v. City of Mesquite, 830 S.W.2d 94, 98
(Tex. 1992). The test is whether the negligent act or omission was a
substantial factor in bringing about injury, without which the harm
would not have occurred. Doe, 907 S.W.2d at 477. Cause in fact is not
shown if the defendant's negligence did no more than furnish a
condition which made the injury possible. See Union Pump Co. v.
Allbritton, 898 S.W.2d 773, 776 (Tex. 1995); Bell v. Campbell, 434
S.W.2d 117, 120 (Tex. 1968). "Thus where the evidence most
favorable to the plaintiff develops more than one equally probable
cause, for one or more of which defendant is not responsible, the
plaintiff has failed to sustain his burden of proof." Klug, 830 S.W.2d at
804 (quoting 13 A.L.R. 2d 22). 

 The affidavit of an interested expert witness, such as a defendant
doctor, can support summary judgment if the subject matter is such
that a trier of fact would be guided solely by the opinion testimony of
experts, if the evidence is clear, positive and direct, otherwise credible
and free from contradictions and inconsistencies, and could have been
readily controverted, even if the expert is a party to the suit. See Tex.
R. Civ. P. 166a(c); Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991);
Boren v. Bullen, 972 S.W.2d 863, 864-65 (Tex. App.--Corpus Christi
1998, no pet.); Noriega, 925 S.W.2d at 266; Perez v. Cueto, 908 S.W.2d
29, 31 (Tex. App.--Houston [14th Dist.] 1995, no writ). If an interested
expert witness presents legally sufficient evidence in support of a
motion for summary judgment, the opposing party must produce other
expert testimony to controvert the claims. Anderson, 808 S.W.2d at 55. 
Lay testimony is insufficient to refute an expert's testimony. Id. 

 The Texas Supreme Court has defined the phrase "could have been
readily controverted" to mean the testimony at issue is of a nature
which can be effectively countered by opposing evidence. Casso v.
Brand, 776 S.W.2d 551, 558 (Tex. 1989). In general, issues such as
intent and knowledge are the kind of issues the supreme court holds as
exemplifying matters that cannot be readily controverted. See Allied
Chemical v. DeHaven, 752 S.W.2d 155, 158 (Tex. App.--Houston [14th
Dist.] 1988, writ denied) (self-serving statements of interested parties,
testifying as to what they knew or intended, do not meet the standards
for summary judgment).

 In support of their argument that the summary judgment evidence
raises a fact issue as to whether Restrepo should have continued to
follow Jensen's progress, the Jensens cite Arango's testimony. 
Viewing the evidence in the light most favorable to the Jensens, Arango
testified that he expected Restrepo to continue to follow Jensen's
progress because in prior consultations with other patients, Restrepo
had followed such a practice. Arango testified he did not personally ask
Restrepo to follow Jensen's condition, but instead, told a nurse to
contact Restrepo if anything happened to Jensen. Arango testified as
follows:

Q: All right. Why did you assume that he [Restrepo] would
continue to follow this patient?


A: Because the condition of the patient was --- you know,
his condition was not normalized. He still had problems.


* * * *


Q: Okay. Did you expect Doctor Restrepo to deal with any
other particular matters that might arise with this patient,
things outside the area of nephrology, for instance?


A: I didn't see why not.(8)


Q: Okay. All right. Now were you relying on the nurses to
contact Doctor Restrepo to tell him about your desire for him
to follow the patient during his absence?


A: Yes.


Q: Okay. And, therefore, I mean, you would have had no
reason to call Doctor Restrepo, yourself, you would ask the
nurses to do that for you; isn't that right?


A: Not quite exactly. Every patient that I had followed by
him pretty much before have been seen until the time of
dismissal.


* * * *


Q: Okay. And that's really all I was trying to find out, that
you did not call Doctor Restrepo, personally, yourself, and
ask him to follow a patient during your absence?


A: That was one of my --- you know the pattern of these
consultations before.


* * * *


Q: You did not call him, personally, and ask him to ---


A: I didn't feel the need to because he had in the past
followed the patient until the last day.


 The Jensens contend that "[w]hether or not Dr. Arango's
expectation as to what Dr. Restrepo would do in Arango's absence is
reasonable should be left to the trier of fact." We disagree. The
Jensens presented no summary judgment evidence that Restrepo was
asked or told by anyone that he was expected to assume the duties of
Jensen's attending physician during Arango's absence. Arango
testified he did not ask Restrepo to follow Jensen's condition because
he "didn't feel the need" to do so. Viewing the evidence in the light
most favorable to the Jensens, Arango's testimony establishes only that
he "assumed" and "expected" Restrepo to follow Jensen's progress. 
We conclude Arango's testimony is of a nature which cannot be readily
controverted, and is therefore incapable of precluding a summary
judgment. See DeHaven, 752 S.W.2d 155 at 158. 

 The Jensens also cite as summary judgment evidence the
affidavit, report, and deposition testimony of Dr. Laurie Barclay, a board-certified neurologist. In her affidavit, Barclay stated that "a consulting
physician such as Dr. Restrepo should always ascertain which
medications have been prescribed for the patient, what the dosages are
and whether or not the patient is receiving the medications in their
proper dosages." She also stated that in her opinion, 

Dr. Restrepo was practicing below the standard of care as a
consulting physician in that he failed to review the patient's
chart to ascertain whether he was actually getting the
medications he assumed he was getting and in that he failed
to order the missing medication when he first saw the
patient on January 17, 1996. 


In her deposition,(9) she testifed that her only criticisms of Restrepo were
that he failed to notice Jensen was not receiving Sinemet and thus
failed to notify Arango of the situation. Barclay testified as follows:

Q: Is the fact that Dr. Restrepo did not notice, I guess for lack
of a better word, that Sinemet was not being given and
bring that to the attention of Dr. Arango, is that your sole
criticism of Dr. Restrepo?


A: Yes.


Q: Do you have --- you have no criticism whatsoever as far
as this who should have been following the patient in a
certain time? That criticism is not a criticism of Dr.
Restrepo?


A: Well, I think someone should have been following the
patient. And I don't personally have the knowledge of, you
know, whether the phone call was made or who was
spoken to or who wasn't spoken to. Assuming that Dr.
Restrepo did not know that he was to be following those
patients or that that was Dr. Arango's assumption, then I
have no criticism of Dr. Restrepo in that respect.


 Barclay also testified that even if Restrepo had noticed that Jensen
was not receiving Sinemet and had so informed Arango, it is
speculation to say whether it would have made any difference to the
outcome. Barclay testified as follows:

Q: All right. Let's suppose that Dr. Restrepo had brought to
Dr. Arango's attention that the Sinemet was not being given. 
Would you agree with me that we don't know what Dr.
Arango would have done had that scenario played out?


A: Yes.


Q: Would you agree with me that it would be pure
speculation on your part to try to make an --- to speculate as
to what Dr. Arango would have done had Dr. Restrepo
brought this to his attention?


A: Yes.


Q: Would you agree with me that had Dr. Restrepo brought
this to [sic] attention, it very well would have made no
difference in Dr. Arango's management of the patient?


A: It may not. 


Q: Would you agree with me that if Dr. Restrepo had
brought this to the attention of Dr. Arango, that it very well
may not have played any factor in this patient's clinical
progression?


A: Had Dr. Arango not changed his mind, no it wouldn't
have made any difference.


Q: We don't know what he would have done. We've agreed
that that could call for speculation.


A: Right. 


We conclude that Barclay's testimony established that it is speculation
to say that any act or omission by Restrepo (including his alleged failure
to notice that Jensen was not receiving Sinemet and failure to notify
Arango) would have made a difference in the outcome. We therefore
conclude that Barclay's testimony is insufficient to establish a causal
connection between Restrepo's conduct and the Jensens' injuries. See
Klug, 830 S.W.2d at 804. 

 We conclude that the Jensens' summary judgment proof was
insufficient to create a fact issue as to whether Restrepo's failure to
follow Jensen's progress proximately caused Jensen's death. 
Accordingly, the trial court did not err in granting summary judgment
in Restrepo's favor. We overrule the Jensens' issue and AFFIRM the
judgment of the trial court. 



 LINDA REYNA YAÑEZ Justice




Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

8th day of February, 2001.




1. Retired Chief Justice Robert Seerden assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003
(Vernon 1998).
2. Nephrology is a branch of medicine concerned with the kidneys. Merriam-Webster's Collegiate Dictionary 799 (10th ed. 1996).
3. Restrepo contends he last saw Jensen on January 18, 1994. Because
evidence favorable to the non-movant will be taken as true, see Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985), we accept January 19th,
the date asserted by the Jensens, as the day Restrepo last saw Jensen. 
4. Arango testified at his deposition that he relied on the hospital nursing staff
to contact Restrepo. He testified he did not "feel the need" to contact Restrepo
personally because "in the past [Restrepo] followed the patient until the last day." A
report submitted by the Jensens' expert, Dr. Laurie Barclay, in support of the
Jensens' response to Restrepo's motion, included a summary of Jensen's hospital
records, which reflect a telephone order from Dr. Arango on January 19, 1994,
indicating that Restrepo was to follow Jensen until Arango's return. 
5. A settlement was reached with McAllen Medical Center. Two physicians were
later non-suited, leaving Drs. Arango, Mireles, and Restrepo as defendants. 
6. The Jensens designated as summary judgment evidence the affidavit and
report of their expert witness, Dr. Laurie Barclay, a board certified neurologist, and the
entire depositions of Barclay, Larry Jensen, Arango, Mireles, Restrepo, and Joseph
Jankovic, a neurologist.
7. In their response to Restrepo's motion for summary judgment, the Jensens
state that:


The entire question as to Dr. Restrepo depends on whether he or Dr.
Arango is to be believed. If the jury does not believe Dr. Arango, then
they will presumably find that Dr. Restrepo was not at fault because he
last saw the patient before the neurologist, Dr. Mireles-Quintanilla wrote
that the Sinemet should be continued. If the jury believes Dr. Arango
that, based upon things that had had [sic] happened in the past with Dr.
Restrepo, he expected Dr. Restrepo to continue seeing Mr. Jensen, then
they could find that Dr. Restrepo failed to cover Dr. Arango and thus
contributed to the failure of Mr. Jensen to get his medication and his
subsequent deterioration and death. [second emphasis added]. 


Similarly, in their appellate brief, the Jensens concede that:


if Dr. Restrepo was correct in signing off on the case after seeing Mr.
Jensen on the [sic] January 19, and if there was no implied agreement
between Dr. Restrepo and Dr. Arango that should have led Dr. Restrepo
to follow Mr. Jensen's situation while Dr. Arango was out of town, then
Dr. Restrepo is off the hook.


8. In the corrections to his deposition, Arango later changed this response to
"Yes, sir." A witness may change responses as reflected in a deposition transcript in
compliance with the requirements set forth in Texas Rule of Civil Procedure 203.1(b). 
See Tex. R. Civ. P. 203.1(b). Arango indicated that the reason for the change was "to
clarify the record."
9. Barclay's affidavit is dated November 13, 1996. Her deposition was taken
approximately a year and a half later, on April 24, 1998.